UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ CV-15-3555 (JFB)

———————

SIR JULES MURRAY,

Petitioner,

VERSUS

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent.

———————

**MEMORANDUM AND ORDER**
August 28, 2017

———————

JOSEPH F. BIANCO, District Judge:

Sir Jules Murray ("petitioner" or "Murray") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his convictions in New York State Court. On April 29, 2010, following a jury trial in the Supreme Court of New York, Nassau County (the "trial court"), petitioner was convicted of six counts of assault in the second degree (N.Y. Penal Law ("NYPL") § 120.05(3)), one count of promoting prison contraband in the second degree (NYPL § 205.20), one count of conspiracy in the sixth degree (NYPL § 105.00), and one count of obstructing governmental administration in the second degree (NYPL § 195.05). These charges arose from three incidents in which petitioner either assaulted, or assisted another inmate in assaulting, corrections officers.

Petitioner was sentenced to three concurrent determinate sentences of seven years' incarceration followed by five years of post-release supervision for three of his assault convictions. Petitioner was sentenced to concurrent determinate sentences of six years' incarceration followed by five years of post-release supervision for the other three assault convictions and one year of incarceration for his obstructing governmental administration conviction. The assault sentences were imposed to run consecutive to each other. For petitioner's promoting prison contraband and conspiracy convictions, he was sentenced to concurrent definite sentences of one year of incarceration and 90 days' incarceration, respectively.

Petitioner challenges his convictions on the following grounds: (1) the trial court erroneously admitted evidence of his gang affiliation and failed to issue adequate limiting

1

instructions regarding gang affiliation; (2) the People's rebuttal witness improperly bolstered another witness's testimony; (3) the evidence was legally insufficient to prove his guilt beyond a reasonable doubt; and (4) petitioner's fair trial right was violated when the trial court imposed a harsher jail sentence after his conviction than his proposed plea offer, and his sentence is unduly harsh and excessive.

For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

A. Factual Background

The following facts are adduced from the petition, respondent's answer and memorandum of law, and the underlying record.

1. Trial Court

At trial, the People produced evidence of three altercations between petitioner and corrections officers, one occurring on January 23, 2009, one on March 2, 2009, and the last on April 28, 2009. On each of those dates, the People's evidence indicated that petitioner either assaulted, or assisted in assaulting, corrections officers.

a. January 23, 2009 Incident

On January 23, 2009, Sergeant Theodore Davis ("Sergeant Davis"), who oversaw inmate and officer movement on the fourth floor of the Riverhead Correctional facility, was notified by another officer that one of the fourth floor housing units smelled of smoke and that the officer thought he saw an inmate smoking in his cell. (T.[1] 451-54.) Lieutenant Conway then authorized a "shake-down"—a search of an area for contraband—of the fourth floor south block. (*Id.* at 86, 455.) Possession of anything that could be smoked is considered contraband. (*Id.* at 92-93.)

A routine shake-down procedure began with the sergeant entering the tier followed by the participating officers in single file, with each officer standing in front of a cell. (*Id.* at 155-58.) The cells were approximately six by eight feet and contained a sink, toilet bowl, and metal bed with a mattress. (*Id.* at 160-61, 194.) Approximately a foot and a half of space existed between the bed and the toilet. (*Id.* at 160-61, 194.) Inmates were instructed to place their hands on the bars facing the two officers in front of their cell. (*Id.* at 158.) Once the sergeant gave the order to open the cell doors, inmates would remove their hands from the bars and step back. (*Id.* at 159.) One of the officers would then enter the cell and instruct the inmate to walk to the back of the cell. (*Id.* at 159-160.) The second officer would block the cell's entrance/exit area. (*Id.* at 160.) Inmates on this block required a strip search, after which they were told to dress and step outside their cell so that officers could enter and search the cell. (*Id.* at 161-65.)

On January 23, approximately 16 officers reported to the fourth floor lobby to participate in the shake-down. (*Id.* at 98.) Corrections Officer Thomas Cotter ("Officer Cotter") was one of these participating members. (*Id.* at 141.) Utilizing the shake-down procedure, Officer Cotter stood outside petitioner's cell with Officer Frank Mele ("Officer Mele") as his partner. (*Id.* at 172, 324.) The officers had not had any prior interactions with petitioner and were unaware he was

---

[1] "T." refers to the trial transcript. (ECF Nos. 7-19 to 7-22.)

2

housed in that particular cell. (*Id.* at 171-72, 324.)

As the shake-down procedure commenced, Officer Cotter was standing in front of the cell and Officer Mele was to his left. (*Id.* at 173, 362.) Petitioner complied with Officer Mele's instruction to put his hands on the bars, and when the sergeant gave the command to open the gates, petitioner complied with Officer Mele's instruction to take his hands off the bars. (*Id.* at 173-74, 324-325.) However, once the gate was approximately three-quarters of the way open, petitioner said "F*** you" and pulled Officer Cotter into the cell. (*Id.* at 174-75, 325-26.) Officer Cotter grabbed petitioner in an unsuccessful attempt to break free, and, instead, was tossed onto the bed by petitioner who stood over Cotter, punching him in the chest. (*Id.* at 175-76, 327-28.) Although Cotter fought back, petitioner seemed to remain unaffected. (*Id.* at 179, 181-82.) Officer Mele immediately entered the cell to assist but petitioner threw multiple punches and kicks at him, striking him in the knee, thigh, rib, and chest area. (*Id.* at 326, 328-29.) The struggle resulted in all participants landing on the floor where the officers tried to restrain and handcuff petitioner, but he continuously resisted despite being instructed to stop resisting. (*Id.* at 334, 336.)

Eventually, both officers handcuffed petitioner. (*Id.* at 183-88, 337.) Petitioner stopped resisting after he was handcuffed and was escorted out of his cell into the lobby. (*Id.* at 183-86, 210-12, 216, 337, 341.) Once in the lobby, petitioner tried to knock the officers off by violently thrashing from side to side and lifting his legs up and down. (*Id.* at 183-86, 210-12, 216, 220-21, 223, 337, 341, 459, 476.) Sergeant Davis intervened to help control petitioner, but petitioner lifted his feet off the ground and everyone lost balance and fell over. (*Id.* at 224-25, 341, 460, 477.) Sergeant Davis suffered an injury, but the other officers managed to subdue petitioner in the ensuing struggle. (*Id.* at 460-61, 478, 480-81.) At that point, petitioner stopped struggling, and, once again, the officers escorted him to the elevator cage. (*Id.* at 226-27, 343, 462.) Two other officers then escorted petitioner to a detention cell and to the hospital. (*Id.* at 229, 344.)

b. March 2, 2009 Incident

On March 2, 2009, Corrections Officer Shawn Springstein ("Officer Springstein") was on duty on the fourth floor southwest tier at the Riverhead Corrections Facility. (*Id.* at 524-25.) Officer Springstein's desk had a full view down the tier and was situated in front of the entrance to the sally port and to the right of a lock box, which controlled the cell doors. (*Id.* at 541-43.)

Inmates on that particular tier get thirty minutes of recreational time in the day area where they can take a shower, make a phone call, or walk down to the end of the tier to borrow reading materials—all at the discretion of the officer on duty. (*Id.* at 526-27, 545.) Only one inmate would be allowed out during their recreational time and inmates cannot linger outside someone's cell. (*Id.* at 527.) Inmates were permitted to bring items they would be using during their recreational time, such as a towel, shampoo, and shower sandals. (*Id.* at 546-47.)

On March 2, inmate Edward Lerner ("Lerner") was released for his recreational time during which Officer Springstein observed that Lerner did not bring anything with him from his cell. (*Id.* at 548-49.) At the end of his recreational time, Lerner refused Officer Springstein's request to return to his cell and, instead, stood in front of petitioner's

3

cell. (*Id.* at 552-53.) Officer Springstein observed petitioner and Lerner communicating with each other, which was prohibited, but he could not make out what they were saying. (*Id.* at 545-46, 552-53.) Officer Springstein then reiterated his command for him to go back to his cell, but Lerner refused and said, "Go get the turtles"—referring to the Sheriff's Emergency Response Team ("SERT"). (*Id.* at 554-55.) At that point, petitioner handed a cup of water and a bottle of lotion to Lerner, who poured the water and the contents from the bottle onto the floor between himself and the officer. (*Id.* at 556-58.) Petitioner then handed Lerner a sock with a block of soap inside, a prohibited weapon colloquially referred to as a "slung." (*Id.* at 558, 582, 584.)

Upon receiving the slung, Lerner hopped around swinging it in an "X" motion. (*Id.* at 559.) Petitioner then said to Lerner, "Do this b**** in front of my cell." (*Id.* at 560, 584.) Lerner then turned to Officer Springstein, who was five to seven feet away from Lerner, and said, "Where you guys at? Bring those mother f****** up"—again referring to the SERT. (*Id.* at 621.) Lerner also told Sergeant Michael Ervolino ("Sergeant Ervolino"), who had come to the scene, that he wanted to fight. (*Id.* at 666.) After Lerner refused several orders to lock in, the SERT team entered and successfully subdued and removed Lerner from the day area. (*Id.* at 706-16.)

c. April 28, 2009 Incident

On April 28, 2009, Officer John Madden ("Officer Madden") instructed a group of ten inmates, who had been walking in single file down one of the corridors, to wait behind the corridor gate until they received clearance to pass. (*Id.* at 867-70.) Petitioner was first in line, followed by Lerner. (*Id.* at 922-23.) After failing to comply with Officer Madden's commands not to touch the gates, petitioner opened the gate with his hands and peered around the corner to look at the female inmates. (*Id.* at 870-72, 896.) Officer Madden ordered petitioner to step back and shut the gate three times. (*Id.* at 873-74.) Each time, petitioner refused to comply, and, after the third command, he moved towards Officer Madden with his hands up in a boxing stance. (*Id.* at 874-85, 954.) In response, Officer Madden punched petitioner in the face and then grabbed his legs to trip him so he could handcuff him on the ground. (*Id.* at 878-79, 954.) Lerner disrupted the take-down by striking Officer Madden from behind, causing the officer to torque his knee. (*Id.* at 880, 955.) Petitioner stood back up. (*Id.* at 881-82.)

Additional officers then came to assist Officer Madden. (*Id.* at 882-85, 986.) Petitioner threw punches and kicks at them, but the officers successfully brought him to the ground (*Id.* at 883-86, 957-58, 1033-37, 1043, 1068, 1081.) Once petitioner was on the ground, Officer Jose Berrios instructed him to "give [him his] hand" multiple times, but petitioner, who was lying on his stomach, refused to be handcuffed by tucking his arms under his chest and clenching his fists. (*Id.* at 887, 962-63, 986.) With Officer Mele's assistance, petitioner was finally handcuffed. (*Id.* at 886, 963, 990, 986, 1039, 1070-71.)

d. Evidence of Petitioner's Gang Affiliation at Trial

During the jury trial, the court admitted evidence of petitioner's possible gang affiliation as it relates to the issue of establishing motive. (*See id.* at 1743-45.) Petitioner repeatedly denied that he was a gang member. (*See, e.g.*, 1221, 1315, 1323.) During cross-examination, he provided non-gang related explanations for his MySpace pictures—which depicted him making a symbol with his hands—and his a letter he'd sent—which

4

included gang-related phrases. (*Id.* at 1319, 1322, 1327-31.)

In response to petitioner's testimony, the People called Investigator Gregory H. Monz ("Investigator Monz"), an expert in the fields of gang practices and identifying gang signs and symbols, as a rebuttal witness. (*Id.* at 1467, 1483-84, 1493.) Officer Monz worked as an investigator in the Gang Intelligence Unit of the Suffolk County Sheriff's Office. (*Id.* at 1468, 1487.) He was familiar with the gang known as the Bloods (*id.* at 1494-95), which was divided into numerous sets and subsets. One such subset is known as G-Shine. (*Id.* at 1495.) He explained that there were different levels within a gang and that one of the ways a gang member could get promoted within the levels was to assault anybody that would be considered law enforcement, such as police officers or corrections officers. (*Id.* at 1507-08.)

Investigator Monz reviewed and translated a letter written by petitioner to another inmate, dated October 21, 2008, and deduced from the contents of the letter that the author of the letter, petitioner, was a member of the Bloods, specifically G-Shine. (*Id.* at 1326, 1496-1507.) He also examined two photographs from petitioner's MySpace webpage and found that petitioner was making a B symbol with his hands, which signified the Bloods. (*Id.* at 1512, 1519, 1523.)

At the end of the trial, the court instructed the jury on the issue of motive and petitioner's possible gang affiliation. (*Id.* at 1743-45.) The instructions provided:

> It is on the issue of motive that I admitted evidence of the Defendant Murray's possible gang affiliation. Defendant Murray denies that he was a member of a gang. Whether you find as a jury that Mr. Murray was or was not a gang member, is not dispositive of his guilt or innocence.
>
> If you find that Mr. Murray was a gang member, you may not consider that as evidence of a propensity to commit crimes. Such membership may or may not give rise to a possible motive as to the charges against him. And I just defined that distinction between intent and motive to you.
>
> Likewise, if you find Mr. Murray was not a gang member, you may consider that fact as a lack of motive to commit the crimes charged.

(*Id.* at 1744-45.)

e. The Verdict and Sentence

On April 29, 2010, a jury convicted petitioner on three counts of assault in the second degree (NYPL § 120.05(3)) for the January 23, 2009 incident involving Officer Cotter, Officer Mele, and Sergeant Davis. (*See* T. 1939-42.) Petitioner was found guilty on one count of promoting prison contraband in the second degree (NYPL § 205.20) and one count of conspiracy in the sixth degree (NYPL § 105.00) for the March 2, 2009 incident. (*See* T. 1939-42.) Petitioner was convicted of three counts of assault in the second degree (NYPL § 120.05(3)) and one count of obstructing governmental administration in the second degree (NYPL § 195.05) for the April 28, 2009 incident involving Officer Madden, Officer Berrios, and Officer Polastina. (*See* T. 1939-42.)

5

On June 22, 2010, petitioner was sentenced to three concurrent determinate sentences of seven years' incarceration followed by five years of post-release supervision for three of his assault convictions. (S.[2] at 16.) Petitioner was sentenced to concurrent determinate sentences of six years' incarceration followed by five years of post-release supervision for the other three assault convictions and one year incarceration for his obstructing governmental administration conviction. (*Id.* at 16-17.) The assault sentences were imposed to run consecutive to each other. (*Id.* at 16.) For petitioner's promoting prison contraband and conspiracy convictions, he was sentenced to concurrent definite sentences of one year of incarceration and 90 days' incarceration, respectively. (*Id.* at 15-16.)

B. Procedural History

1. State Procedural History

On July 9, 2013, petitioner filed a direct appeal to the Supreme Court, Appellate Division, Second Department, in which he argued, *inter alia*, that (1) the trial court erroneously admitted evidence of petitioner's gang affiliation and failed to issue adequate limiting instructions regarding gang affiliation; (2) the People's rebuttal witness improperly bolstered Officer Mele's testimony; (3) the evidence was legally insufficient to prove his guilt beyond a reasonable doubt; and (4) petitioner's fair trial right was violated when the trial court imposed a harsher jail sentence after his conviction than his proposed plea offer, and his sentence is unduly harsh and excessive. (*See* Appellant's Br., ECF No. 7-10, at i-ii.)

On April 30, 2014, the appeal of his conviction was denied on both procedural and substantive grounds. *See People v. Murray*, 984 N.Y.S.2d 417 (App. Div. 2014). In affirming his conviction, the Appellate Division rejected petitioner's first and second arguments relating to the trial court's evidentiary rulings, holding that the trial court properly exercised its discretion in admitting evidence regarding the defendant's gang membership. *Id.* at 418. Since "defense counsel told the jury in his opening statement that the defendant had no motive to commit the crimes and that, in the absence of a motive, the crimes were inexplicable," the Appellate Division found that the trial court properly permitted the People to present evidence that was probative of the defendant's motive, and the court's limiting instructions alleviated any prejudice from this evidence. *Id.* This included evidence that petitioner was a gang member and that assaulting corrections officers was a way to advance a member's status within the gang. *Id.* The Appellate Division also found that the trial court properly permitted the People to introduce expert testimony to rebut petitioner's claim that he had no motive to assault correction officers. *Id.* In addition, petitioner's argument that the expert testimony improperly bolstered Officer Mele's testimony was found to be unpreserved for appellate review and without merit. *Id.*

In rejecting petitioner's third argument relating to the sufficiency of the evidence, the Appellate Division held that, in "viewing the evidence at trial in the light most favorable to the prosecution," it was legally sufficient to establish the petitioner's guilt beyond a reasonable doubt. *Id.* Furthermore, when conducting its review of the weight of the evidence, the court "accord[ed] great deference to the fact finder's opportunity to view the witnesses, hear the testimony, and observe

---

[2] "S." refers to the sentencing transcript. (ECF No. 7-23.)

demeanor. *Id.* In reviewing the record, the court concluded that "the verdict of guilt was not against the weight of the evidence." *Id.*

Finally, the Appellate Division rejected petitioner's fourth argument that the trial court violated his right to trial by imposing a harsher jail sentence after his conviction than his proposed plea offer sentence and that his sentence is unduly harsh and excessive. *Id.* at 418-19. The court held that petitioner "failed to preserve for appellate review his contention that the Supreme Court, by the sentences it imposed, penalized him for exercising his right to a trial," and in any case, "the fact that the sentences imposed were greater than what the defendant had been offered in connection with a proposed plea agreement does not, standing alone, establish that he was punished for proceeding to trial." *Id.* at 418-19. Additionally, the court found that "the transcript of the sentencing proceedings does not support a finding that the sentencing determination was tainted by retaliation or vindictiveness." *Id.* Finally, the Appellate Division found that the sentences imposed were not excessive. *Id.* On December 3, 2014, the New York Court of Appeals denied petitioner leave to appeal. *See People v. Murray*, 24 N.Y.3d 1087 (N.Y. 2014) (Table).

2. The Petition

On June 8, 2015, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that: (1) the trial court erroneously admitted evidence of petitioner's gang affiliation and failed to issue adequate limiting instructions regarding gang affiliation, thus denying him his right to a fair trial; (2) the People's rebuttal witness improperly bolstered Officer Mele's testimony; (3) the evidence was legally insufficient to prove his guilt beyond a reasonable doubt; and (4) petitioner's fair trial right was violated when the trial court imposed a harsher jail sentence after his conviction than his proposed plea offer, and his sentence is unduly harsh and excessive. (*See* Pet., ECF No. 1, at 6-12.) Respondent filed an answer and memorandum of law opposing the petitioner application on November 25, 2015. (ECF No. 6.) The Court has fully considered all submissions of the parties.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F. 3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

Petitioner argues that: (1) the trial court erroneously admitted evidence of his gang affiliation and failed to issue adequate limiting instructions regarding it; (2) the People's rebuttal witness improperly bolstered Officer Mele's testimony; (3) the evidence was legally insufficient to prove his guilt beyond a reasonable doubt; and (4) petitioner's fair trial right was violated when the trial court imposed a harsher jail sentence after his conviction than his proposed plea offer, and his sentence is unduly harsh and excessive. (*See* Pet. at 6-12.) For the reasons discussed below, the Court concludes none of these arguments provide grounds for habeas relief in this case.

A. Gang Affiliation Claims

Petitioner contends that the trial court erred in admitting evidence pertaining to his alleged gang affiliation, thus denying him a fair trial. He also contends that the trial court failed to provide adequate limiting instructions to the jury regarding the issue of motive and petitioner's possible gang affiliation, thus failing to minimize any prejudicial effect the gang-affiliation evidence may have had on the jury. As set forth below, these claims are without merit and do not warrant habeas relief because the admission of this evidence was not erroneous under state law and the court's limiting instructions were constitutionally adequate.

1. Admissibility

Petitioner contends that he was denied a fair trial because the trial court erroneously allowed evidence of his alleged gang affiliation to be introduced through Officer Mele's

8

re-direct testimony, petitioner's cross-examination, and the prosecution's rebuttal witness. The Appellate Division found this claim to be without merit. *Murray*, 984 N.Y.S.2d at 418. Therefore, AEDPA deference applies. As set forth below, there is no basis to conclude that the state court's evidentiary ruling or the Appellate Division's affirmance thereof was erroneous under state law. Nor has petitioner demonstrated that the ruling, even if erroneous, rose to a constitutional level that deprived him of a fair trial. Thus, petitioner's claim does not warrant habeas relief.

It is well settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (citations omitted). Instead, for a *habeas* petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived her of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988))). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant"). Moreover, the court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson*, 955 F.2d at 181).

In making this due process determination, the court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 n. 7 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001).

Here, there is no basis to conclude that the trial court's admission of the evidence regarding gang affiliation by the petitioner was erroneous under state law. Under New York law, evidence of a defendant's prior bad acts is admissible if such evidence helps refute disputed contentions posed by the defendant at trial. *See e.g. People v. Rojas*, 97 NY2d 32, 38 (2001) (stating that the court "[has] recognized that the prosecution, even when it did *not* initially seek to introduce such proof, may introduce evidence of prior crimes to refute defendants' contentions at trial"). In *Rojas*, for example, where a defendant was charged with assault, the Appellate Division held that the trial court properly admitted evidence of defendant's prior crimes where the defense counsel had "strongly suggested, if

not argued, that the jury should acquit defendant because, having done nothing wrong, he was abused and mistreated, culminating in a scuffle with guards who surrounded him in his cell." *Rojas*, 97 N.Y.2d at 39. Since the defense argued that defendant's confinement was unjustified, the Appellate Division held that the trial court properly permitted the People to supply a justification and to refute defendant's misleading contentions, reasoning "[h]ad the court allowed defendant's misleading assertion to remain unrefuted or unexplained, the jury would have been invited to acquit defendant based on the erroneous belief that he was unjustly confined and mistreated." *Id.*

Furthermore, as noted by the Appellate Division in affirming petitioner's conviction, appellate courts in New York have held that, where evidence of a defendant's gang affiliation helps elucidate motive for a crime, such evidence is admissible. *See Murray*, 984 N.Y.S.2d at 418 (citing, *inter alia*, *People v. Scott*, 70 A.D.3d 977, 977 (N.Y. App. Div. 2010)). In *Scott*, for instance, the Appellate Division held that the trial court properly exercised its discretion in admitting the testimony of an expert witness on gangs, gang-related customs, and violent gang practices where defendant was being tried for murder. The Appellate Division found this evidence to be "highly probative of the defendant's motive, as well as explanatory of the defendant's actions and, thus, critical to the jury's understanding of the relationship between the defendant and the victim." 70 A.D.3d at 977; *see also People v. Cain*, 16 A.D.3d 288, 288 (N.Y. App. Div. 2005) ("Testimony from surviving victim and from expert witness concerning defendant's membership in gang, as well as customs, hierarchies and violent practices of gang, was admissible since it was highly probative of defendant's motive."); *People v. Avila*, 303 A.D.2d 165, 166 (N.Y. App. Div. 2003) ("The court properly exercised its discretion in admitting expert testimony regarding gang customs and rituals. This testimony was explanatory of defendant's actions and unusual statements at the time of the crime and was relevant to his motive.").

Here, like in *Rojas*, the trial court properly admitted evidence of petitioner's gang affiliation to rebut his claim that he had no motive for the crime, a claim that would have been materially misleading to the jury without the gang evidence. *See Rojas*, 97 N.Y.2d at 39. Indeed, like in *Scott*, the gang affiliation evidence was "highly probative of the defendant's motive." 70 A.D.3d at 977. Thus, under *Rojas* and *Scott*, the People were permitted to produce evidence that petitioner was a gang member and that gang members could advance their status in the gang by assaulting corrections officers. Accordingly, the trial court did not err in admitting such details pertaining to petitioner's gang affiliation.

In short, the admission of the gang affiliation evidence was not erroneous under New York state law and, therefore, did not violate petitioner's due process rights as required to entitle him to habeas relief. *See Wade*, 333 F.3d at 59 n. 7; *Davis*, 270 F.3d at 123-24.

2. Adequacy of the Limiting Instructions

Petitioner claims that the trial court failed to provide adequate limiting instructions to the jury. This claim also lacks merit.

As the Second Circuit has held, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *Del Valle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). A petitioner must establish that "'the ailing instruction by itself so infected

the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"). In addition, "any allegedly erroneous jury instruction should be reviewed in light of the 'well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Huber v. Schriver*, 140 F. Supp. 2d 265, 282 (E.D.N.Y. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).

Petitioner plainly has not met this high burden in light of the law set forth above on the admissibility of gang affiliation evidence to prove motive and the detailed instructions provided by the trial court that comport with this law. Specifically, as noted above, evidence of gang affiliation is admissible to prove motive, *see, e.g.*, *Scott*, 70 A.D.3d at 977; *Cain*, 16 A.D.3d at 288, and the trial court clearly instructed the jury that it could only consider such evidence for motive, not for propensity or as proof of guilt or innocence (T. 1744-45 ("It is on the issue of motive that I admitted evidence of the Defendant Murray's possible gang affiliation. . . . Whether you find as a jury that Mr. Murray was or was not a gang member, is not dispositive of his guilt or innocence. If you find that Mr. Murray was a gang member, you may not consider that as evidence of a propensity to commit crimes.")). The instructions were thus consistent with New York law and did not violate due process. *See Del Valle*, 306 F.3d at 1200.

### B. Bolstering Claim

Petitioner also argues that the People's rebuttal witness on gang affiliation constituted improper bolstering. Respondent argues this claim is procedurally barred because petitioner failed to preserve this challenge for appellate review. As set forth below, the Court agrees.

#### 1. Applicable Law

##### i. Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), he still must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one

11

complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

ii. Procedural Default

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted [on] those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceedings." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

iii. Application

Here, although petitioner adequately exhausted his bolstering claim by raising it on appeal to the Appellate Division, *see Murray*, 984 N.Y.S.2d 417, and in his petition to the New York State Court of Appeals, *see People v. Murray*, 24 N.Y.3d 1087 (2014), the claim is procedurally barred from habeas corpus review based on procedural default.

As the Appellate Division indicated on direct appeal, petitioner procedurally defaulted on his bolstering claim by failing to preserve it for appellate review pursuant to N.Y. C.P.L. § 470.05[2]. *Murray*, 984 N.Y.S.2d at 418. Under that provision, "'a general objection is not sufficient to preserve an issue'" for appeal. N.Y. C.P.L. § 470.05[2]. This rule constitutes an independent and adequate state ground to deny relief. *Richardson v. Green*, 497 F.3d 212, 218, 220 (2d Cir. 2007) (quoting *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007)). Because petitioner did not object on bolstering grounds at trial, and because the Appellate Division relied on this independent and adequate state procedural rule to reject this claim, petitioner's bolstering claim is procedurally barred. *See id.* Furthermore, petitioner has not demonstrated cause and prejudice resulting from this procedural default, nor a miscarriage of justice. That is, he has not even attempted to provide an explanation for his failure to raise this argument at trial, and, even if he had, he has not made a showing of prejudice, given the strong evidence of guilt discussed below. *See Coleman*, 501 U.S. at 750; *McLeod v. Graham*, No. 10 Civ. 3778, 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (noting that, to show cause, a petitioner must establish that "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel"); *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (noting that, to show prejudice, a petitioner must establish that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions"). Thus, this claim is procedurally barred.[3]

C. Insufficiency of the Evidence Claim

Petitioner claims that the evidence presented at trial was legally insufficient to establish his guilt.[4] For the reasons set forth below, the Court concludes that this claim is without merit.

---

[3] In any event, the claim fails on the merits. Given petitioner's repeated denials of gang affiliation during his testimony, it was proper for the trial court to allow a rebuttal witness (with proper qualifications) to provide additional testimony regarding gang signs, symbols, and practices. *See People v. Harris*, 442 N.E.2d 1205, 1209 (1982) (holding that trial court properly admitted witness's testimony on rebuttal to refute defendant's direct testimony); *see also Scott*, 70 A.D.3d at 977 (gang affiliation evidence admissible to prove motive); *Cain*, 16 A.D.3d at 288 (same); *Avila*, 303 A.D.2d at 166 (same).

[4] Petitioner also asserts that the verdict was against the weight of the evidence. A "weight of the evidence" claim, however, is based on state law, *see Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."), and the Court cannot consider a purely state law claim on federal habeas review, *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law. . . ."). Therefore, this claim is not reviewable. *See Urruita v. Greene*, No. 05-CV-6153 CJS, 2007 WL 2484305, at *2 (W.D.N.Y. Aug. 28, 2007) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review.").

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "'bears a very heavy burden'" when challenging evidentiary sufficiency in a writ of habeas corpus. *Einaugler v. Supreme Court of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

Petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008 (quoting *Jackson*, 433 U.S. at 324).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In this case, petitioner argues that his conviction was not based on legally sufficient evidence. The Appellate Division rejected this claim on the merits, holding that, viewing the evidence in the light most favorable to the prosecution, the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt" and that "the verdict of guilt was not against the weight of the evidence." *Murray*, 984 N.Y.S.2d at 418. Therefore, AEDPA deference applies. For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

1. Assault Convictions

First, the evidence was sufficient to support petitioner's conviction for assault in the second degree on all six counts. Under NYPL § 120.05(3), a person is guilty of assault in the second degree when "with intent to prevent a peace officer, a police officer, or employee of any entity governed by the public service law in the course of performing an essential service, from performing a lawful duty . . . he or she causes physical injury to such peace officer, police officer . . . or employee of an entity governed by the public service law." In *Vera v. Woods*, No. 06-CV-1684 (JFB), 2008 WL 2157112 at *9 (E.D.N.Y. May 21, 2008), for example, the court upheld a second-degree assault conviction against a sufficiency of the evidence

challenge where a petitioner was only identified by one eyewitness who testified to seeing the petitioner strike the victim with a bat. The Second Circuit has emphasized that "the testimony of a single, uncorroborated eyewitness is generally sufficient to support conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979); *see also Bentley v. Scully*, 41 F.3d 818, 825 (2d Cir. 1994) (stating that eyewitness testimony and identification constituted a major portion of overwhelming evidence of guilt); *see also King v. Greiner*, 210 F. Supp. 2d 177, 185 (E.D.N.Y. 2002) (holding that a petitioner's claim of legally insufficient evidence lacked merit in light of eyewitness identification); *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (holding that the testimony of one eyewitness defeated a petitioner's claim of legally insufficient evidence).

In this case, the prosecution presented evidence to support petitioner's assault convictions because the prosecution provided testimony of not just one eyewitness, which was sufficient under *Woods*, but rather multiple witnesses who testified that they personally observed each assault. Officer Mele, Officer Cotter, and Sergeant Davis each testified to being physically attacked and injured by petitioner on January 23, 2009 in their course of performing a search of petitioner's tier for contraband; this incident resulted in three of petitioner's second degree assault charges. Specifically, Officer Cotter testified to being grabbed and struck by petitioner in the upper body area, resulting in bruised calves and a groin injury. (T. 175-77, 231, 260.) Sergeant Davis and Officer Mele both testified that they required medical treatment for their injuries that resulted from the January 23, 2009 altercation with petitioner. (*Id.* at 347, 380, 485-86.) The other three assault convictions arose from the April 28, 2009 incident. Multiple officers testified that they personally observed these assaults, including Officers Madden, Berrios, and Polastina. Officer Madden's testimony established that, during his attempt to transport inmates by foot through the tier, petitioner failed to comply with his commands and, instead, threw punches and kicks at him and at the two other officers, Officers Berrios and Polastina, who had come to assist him in controlling petitioner. (*See id.* at 870-86.)

Several officers also testified to injuries sustained in these encounters. Officer Berrios testified that he sustained injuries that required medical attention (*id.* at 1040-41), Officer Madden testified that he needed surgery on his left knee (*id.* at 888-90), and Officer Polastina testified to suffering from a torn rotator cuff on his left arm (*id.* at 1075). Their testimony was also supported by medical and photographic evidence documenting their injuries from the assault. (*See, e.g.*, *id.* at 890-91 (photographs admitted showing facial cuts Madden sustained from April 28 incidents); *id.* at 1105-06 (doctor testifying about injuries to Officer Mele's right knee); *id.* at 1149 (medical records of Officer Polastina admitted showing results of M.R.I. on his left shoulder consistent with his testimony).)

Such evidence is plainly sufficient to support the conviction. *See Woods*, 2008 WL 2157112 at *9; *Danzey*, 594 F.2d at 916. Indeed, given that so many eyewitnesses testified to the assaults and medical evidence was presented to corroborate those eyewitness accounts, the Court concludes that the evidence of guilt on the assault charges was not just sufficient but overwhelming. *See, e.g.*, *Chrysler v. Guiney*, 806 F.3d 104, 120 (2d Cir. 2015); *Persad v. Conway*, 368 F. App'x 265, 266 (2d Cir. 2010); *United States v. Farmer*, 583 F.3d 131 (2d Cir. 2009).

### 2. Promoting Prison Contraband Charge

Second, the evidence was sufficient to support petitioner's promoting prison contraband conviction in the second degree. Under NYPL § 205.20, "a person is guilty of promoting prison contraband in the second degree when . . . being a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any contraband." In *Finley v. Graham*, No. 12 Civ. 9055 (KMK)(PED), 2014 WL 10965412, at *14 (S.D.N.Y. August 26, 2014), for example, the court upheld a second-degree conviction for promoting prison contraband against a sufficiency of the evidence challenge where several other inmates testified that petitioner participated in phone calls made from cell phones smuggled into the prison. Phone records also showed that such cell phones were in use while petitioner was incarcerated. *Id.* The evidence in this case is similarly strong. Two officers testified to witnessing petitioner, on March 2, 2009, hand Lerner a sock with a block of soap inside while Lerner was outside of his cell during recreational time, and there is no dispute that such an item is considered prison contraband. (T. 545-46, 552-53, 558, 580-82, 584, 666-67.) The slung itself was also admitted into evidence. (*Id.* at 714.) Such evidence is clearly sufficient to support the conviction. *See Woods*, 2008 WL 2157112 at *9; *Finley*, 2014 WL 10965412, at *14.

### 3. Conspiracy Charge

Third, petitioner's conspiracy conviction in the sixth degree was supported by sufficient evidence. Under NYPL § 105.00, "a person is guilty of conspiracy in the sixth degree when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." In *People v. Flanagan*, 71 N.E.3d 541, 554 (N.Y. 2017), the New York Court of Appeals upheld a sixth-degree conspiracy conviction against a sufficiency of the evidence challenge where, *inter alia*, the defendant's co-conspirators testified about the agreement they had with him. Likewise, here, multiple eyewitnesses testified that petitioner, after communicating with another inmate against the corrections facility's rules, handed the inmate a "slung," as well as a cup of water with a bottle of lotion, which the inmate poured across the floor between himself and an officer. (*See* T. 548-68, 660-71.) Such evidence is clearly sufficient to support the conviction. *See People v. Camarre*, 171 A.D.2d 1070, 1070 (N.Y. App. Div. 1991) (noting that evidence is sufficient to support a defendant's conviction of sixth degree conspiracy "if it shows that defendant and another had a tacit prearranged agreement—a shared specific intent—to commit the crime" and stating that "proof of the intent and the agreement can be inferred from circumstantial facts. . . ."); *Woods* 2008 WL 2157112 at *9; *Danzey*, 594 F.2d at 916.

### 4. Obstructing Governmental Administration Charge

Finally, the evidence was plainly sufficient to support petitioner's conviction for obstructing governmental administration conviction in the second degree. Under NYPL § 195.05,

> a person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering,

16

whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state. . . ."

In *People v. Baltes*, 75 A.D.3d 656, 659 (N.Y. App. Div 2010), for example, the court held that the evidence supported a conviction for second-degree obstructing governmental administration where a witness testified that defendant was belligerent, uncooperative, and refused a direct request from an officer. The same is true here. An eyewitness officer testified that, during his attempt to transport inmates by foot through the tier, petitioner failed to comply with the officer's commands and, instead, threatened the officer. (*Id.* at 873-76.) The officer also testified that petitioner resisted the requests of two other officers who had come to assist in controlling petitioner. (*Id.* at 873-76.) Multiple witnesses further testified that petitioner ignored multiple requests to "give [the officer his] hand" to be handcuffed by tucking his arms under his chest and clenching his fists. (*Id.* at 887, 962-63, 986.) This evidence is clearly sufficient to support his conspiracy conviction. *See Baltes*, 75 A.D.3d at 659; *Woods* 2008 WL 2157112 at *9; *Danzey*, 594 F.2d at 916.

\* \* \*

In sum, the Court concludes that the evidence was legally sufficient to establish that a rational trier could find petitioner guilty beyond a reasonable doubt of six counts of assault in the second degree, one count of promoting prison contraband in the second degree, one count of conspiracy in the sixth degree, and one count of obstructing governmental administration in the second degree. Therefore, the Court finds that petitioner's sufficiency of the evidence claim is without merit, and thus, the state court's ruling was not contrary to, or an unreasonably application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

D. Vindictive and Harsh Sentence Claims

Petitioner also claims that the sentence imposed by the trial court was vindictive, harsh, and excessive. For the reasons set forth below, the Court concludes that (1) petitioner's vindictiveness claim is procedurally barred and, in any case, fails on the merits, and (2) his harsh and excessive sentence claim is also meritless.

1. Judicial Vindictiveness

Respondent argues this claim is procedurally barred because petitioner failed to preserve this challenge for appellate review, and, in any event, that it lacks merit. For the reasons set forth below, this Court agrees.

i. Procedural Bar

Like the bolstering claim, petitioner's judicial vindictiveness claim is barred based on procedural default. Petitioner exhausted his state remedies regarding this claim by raising it on direct appeal to the Appellate Division, and the New York State Court of Appeals denied petitioner's leave to appeal. *See Murray*, 24 N.Y.3d 1087; *Murray*, 984 N.Y.S.2d at 418. However, the Appellate Division on direct appeal held that this claim was procedurally barred because it was not preserved at the trial level. *See Murray*, 984 N.Y.S.2d at 418. Therefore, this Court concludes that this claim is procedurally barred from federal habeas review for the same reasons as the bolstering claim. *See Richardson*, 497 F.3d at 220. Furthermore, again like the bolstering claim, petitioner has not demonstrated cause or prejudice resulting from this procedural default, nor a miscarriage of justice. *See*

*McLeod v. Graham*, 2010 WL 5125317, at *3; *Torres*, 316 F.3d at 152.

### ii. Merits

Even if petitioner's judicial vindictiveness claim was not procedurally barred, it still lacks merit. Petitioner claims that the trial court, by the sentences it imposed, penalized him for exercising his right to a trial because he received a harsher jail sentence after his conviction than his proposed plea offer sentence. Petitioner contends, on these grounds, that his right to a fair trial was violated.

A petitioner may not be punished for going to trial. The Sixth Amendment guarantees the right to a trial by jury, and a court may not penalize a person for exercising a right guaranteed under the Constitution. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). However, plea bargains, which often require a defendant to choose between going to trial and pleading guilty to receive a reduced sentence, are an important and constitutional part of the criminal justice system. *See Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978) ("[T]here is no *per se* rule against encouraging guilty pleas."). "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not always forbid requiring him to choose." *Bonner v. Smith*, No. 05-CV-4209 (JG), 2006 WL 463499, at *25-26, 2006 WL 463499 (E.D.N.Y. Feb. 24, 2006) (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)); *see also Brady v. United States*, 397 U.S. 742, 750-51 (1970).

There is no evidence that petitioner's sentence was vindictive and thus violated his right to a fair trial. Petitioner contends that his fair trial right was violated when the trial court imposed a harsher jail sentence of 13 years' incarceration after his conviction than his proposed pre-trial plea offer sentence of 3 1/2 years of incarceration. However, a trial court's imposition of a higher sentence than that recommended in a plea offer does not, in and of itself, establish actual vindictiveness. *See Naranjo*, 2003 WL 1900867, at *10 (citing *Corbitt*, 439 U.S. at 219, 223). In other words, a discrepancy between an offered plea bargain and the actual sentence alone does not make out a claim of constitutionally impermissible vindictive sentencing. *See Bailey v. Artuz*, No. 94-CV-1240 (GJD/RSP), 1995 WL 684057, at *2 (N.D.N.Y. Nov. 15, 1995); *Pabon v. Hake*, 763 F. Supp. 1189, 1194-95 (E.D.N.Y. 1991) (holding that petitioner was not vindictively sentenced when only evidence of vindictive sentencing that petitioner presented was that the sentence he received was greater than promised sentence he rejected as part of plea bargain); *see United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976) ("[L]enience to those who exhibit contrition by admitting guilt does not carry a corollary that the [j]udge indulges a policy of penalizing those who elect to stand trial.") (internal citation omitted); *Bonner*, 2006 U.S. Dist. LEXIS 6925, at *25-26 (holding that the imposition of a seventy-five year sentence when defendant was offered plea bargain of seven years did not establish a violation of defendant's Sixth Amendment right to trial by jury); *People v. Durkin*, 518 N.Y.S.2d 38 (App. Div. 1987) (holding that the fact that the trial court's sentence is greater than the People's offer does not automatically establish that defendant has been punished for asserting his right to a jury trial). Beyond showing that a discrepancy exists between the plea bargain offered to him and the

actual sentence he received, petitioner has not offered any evidence of vindictive sentencing.

Furthermore, the judge never stated or implied that petitioner's sentence was based on his failure to accept the prosecutor's plea offer. *See Naranjo*, 2003 WL 1900867, at *10 (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer). There is also no evidence that the judge threatened petitioner with a more severe sentence if he elected to go to trial, which would "establish a per se violation of the defendant's Sixth Amendment right to a trial. . . ." *Fielding v. Lefevre*, 548 F.2d 1102, 1106 (2d Cir.1977) (citations omitted); *see also Izaguirre v. Lee*, 856 F. Supp. 2d 551, 577 (E.D.N.Y. 2012) (holding that petitioner established entitlement to a presumption of vindictiveness where the trial court followed through on pre-trial threat to impose a non-mandatory statutory maximum if defendant went to trial).

In sum, the Court finds that the Appellate Division's conclusion that petitioner's judicial vindictiveness claim fails on the merits and was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was it based on an unreasonable determination of the facts. Therefore, petitioner's application for habeas corpus relief on this ground is denied.

2. Harsh and Excessive Sentence

Petitioner contends that the 14-year sentence imposed on him for the crimes of which he was convicted was unduly harsh and excessive. The Appellate Division found that petitioner's sentence was not excessive. *Murray*, 984 N.Y.S.2d at 418. Therefore, AEDPA deference applies. The Court concludes that the Appellate Division's holding that petitioner's sentence was not harsh and excessive was not contrary to, or an unreasonable application of, clearly established federal law.

When a petitioner is claiming that his sentence is harsh and excessive, for purpose of habeas review, "[n]o federal constitutional issue is presented [if] . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92–cv–2302 (DRH), 1993 WL 173625, at *4 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review."); *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988).

Here, petitioner's sentence was within the permissible range prescribed by New York state law, and thus there is no federal question for habeas review. *See White*, 969 F.2d at 1383. Specifically, a sentence for each crime fell within the range prescribed by New York statutory law. The most serious charge, Assault in the Second Degree, is a Class D Violent Felony. *See* NYPL § 120.05(3). According to NYPL § 70.06(6)(c) at the time of sentencing, for a Class D Violent Felony "the term must be at least three years and must not exceed seven years." Petitioner was sentenced to either six or seven years' incarceration for his various assault convictions, which are within the prescribed statutory range. Furthermore, since the assault convictions arose from separate incidents, the trial court also properly imposed consecutive sentences for those convictions. *See* NYPL § 70.25. Moreover, for petitioner's obstructing governmental administration in the second degree charge, NYPL § 195.05, and promoting prison contraband in the second degree charge, NYPL § 205.20, both of which are

Class A Misdemeanors, he was properly sentenced to one year of incarceration, which is within the statutory guidelines range. *See* NYPL § 70.15. ("When such a sentence is imposed the term shall be fixed by the court, and shall not exceed one year."). Finally, for conspiracy in the sixth degree, which is a Class B Misdemeanor, NYPL § 105.00, "the term . . . shall not exceed three months." NYPL § 70.25. Because petitioner's sentence of 90 days' imprisonment on that count is within the statutorily prescribed range, it raises no constitutional concerns. Therefore, petitioner's harsh and excessive sentence claim is without merit.

### IV. Conclusion

In sum, petitioner's claims for improper bolstering and vindictive sentencing are procedurally barred, and, in any event, all his claims are without merit. Thus, this Court concludes that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, the petition for a writ of habeas corpus is denied in its entirety. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 28, 2017
       Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Madeline Singas, District Attorney, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.